# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARCHITETTURA INC. | § § § | |
| v. | § § | CIVIL ACTION NO. 3:16-CV-3021-S |
| DSGN ASSOCIATES INC, et al. | § § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Boston Capital Corporation's ("Boston Capital") Motion to Dismiss Plaintiff's Third Amended Complaint [ECF No. 121]. For the reasons set forth below, the Court grants the motion.

### I. BACKGROUND

Pursuant to Special Order 3-318, this case was transferred from the docket of Judge Sidney A. Fitzwater to the docket of this Court on March 8, 2018.

This dispute arises out of the alleged use of Plaintiff Architettura, Inc.'s ("Architettura") protected works in the development and marketing of various real estate projects. Architettura is a Texas architectural firm run by Frank Pollacia ("Pollacia"). Pl.'s Third Am. Compl. ("Compl.") 2. Through his company, Pollacia creates original works, such as architectural drawings and renderings. *Id.* Architettura contracted with Defendant Brandon Bolin ("Bolin"), a lawyer, to build housing projects using Architettura's intellectual property. *Id.* Defendant DSGN Associates, Inc. ("DSGN") and its owners, Robert and Patricia Meckfessel, worked on several of the projects at issue as the interior design firm. *Id.*

Architettura alleges that Bolin or one of his entities, along with DSGN, copied and used Pollacia's copyrighted designs in the marketing brochure for a project called Avondale Seniors. *Id.* ¶ 30. Architettura was not involved in the Avondale Seniors project. *Id.* Bolin and his entities presented the marketing submissions to potential investors, including Boston Capital. *Id.* ¶ 35. Architettura alleges that Boston Capital's in-house architect reviewed the materials for compliance and veracity. *Id.* Then, Boston Capital allegedly shared the protected works with potential investors. *Id.* Architettura also alleges that Boston Capital granted a loan to support the Avondale Seniors project. *Id.* at 3.

Architettura brought suit against more than 20 defendants, alleging direct and vicarious copyright infringement. Boston Capital moved to dismiss the copyright infringement claims against it for lack of personal jurisdiction and for failure to state a claim. This is not the first time Boston Capital has filed a motion to dismiss in the instant case. Boston Capital moved to dismiss Architettura's Second Amended Complaint for lack of personal jurisdiction and for failure to state a claim. *See* Boston Capital's Mot. to Dismiss Pl.'s Second Am. Compl. (the "Prior Motion") [ECF No. 27]. Because the Court granted Architettura's Motion for Leave to File Third Amended Complaint, it denied the Prior Motion as moot. *See* Mem. Op. & Order [ECF No. 103].

## II. THE RULE 12(b)(2) STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows defendants to move to dismiss claims for lack of personal jurisdiction. The plaintiff bears the burden of making a *prima facie* showing that a court has personal jurisdiction over a defendant. *Monkton Ins. Svcs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). In considering a motion to dismiss pursuant to Rule 12(b)(2), the court must accept the plaintiff's "uncontroverted allegations, and resolve in its favor all conflicts." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). The court may consider

"affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

Because Texas's long-arm statute extends to the limits of federal due process, this Court has personal jurisdiction over a nonresident defendant so long as the assertion of jurisdiction comports with the Due Process Clause of the United States Constitution. *See Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "Due process requires that the defendant have 'minimum contacts' with the forum state . . . and that exercising jurisdiction is consistent with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).

Personal jurisdiction can be general or specific. *See Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). General jurisdiction allows a court to hear any claim against a nonresident defendant, and it exists when that defendant's "affiliations with [Texas] are so 'continuous and systematic' as to render them essentially at home in [Texas]." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "Establishing general jurisdiction is 'difficult' and requires 'extensive contacts between a defendant and a forum.'" *Sangha*, 882 F.3d at 101-02 (quoting *Johnston*, 523 F.3d at 609). In contrast, specific jurisdiction arises "when a nonresident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001)). In Texas, this requires "a substantial connection between [the] contacts and the operative facts of the litigation." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007). The minimum contacts analysis is fact intensive, and the touchstone is "whether the defendant's conduct shows that it 'reasonably

anticipates being haled into court'" in the forum state. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)).

Once the plaintiff establishes minimum contacts, the burden shifts to the defendant to show that the exercise of jurisdiction is "unfair and unreasonable." *Sangha*, 882 F.3d at 102. In determining whether the defendant has carried this burden, courts balance five factors: (1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies. *Id.*

## III. ANALYSIS

The Court must first address Boston Capital's motion to dismiss for lack of jurisdiction. Without jurisdiction, the Court cannot entertain the case. *See, e.g., Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).

Dismissal of Architettura's claims against Boston Capital is warranted because the Court has neither general nor specific personal jurisdiction over Boston Capital. As to general jurisdiction, Boston Capital is incorporated in Massachusetts and has its principal place of business in Massachusetts. Def.'s Br. 5. Architettura attempts to overcome this fact by arguing that Boston Capital has two subsidiaries operating in Texas, has invested in many projects in Texas, and has employees, including its assistant vice president, in Texas.[1] It is "incredibly difficult to establish

---

[1] Architettura purportedly relied on a statement from Boston Capital's website to claim that Boston Capital has 200 employees in Texas. *See* Pl.'s Br. 12. The complete quotation says that Boston Capital has 200 employees in five states, one of which is Texas. *See id.* Ex. A, at 2. It is unclear how many of Boston Capital's employees are actually in Texas, and Architettura has offered no further evidence of the correct number. The Court admonishes Architettura for the misleading quotation on the actual number of individuals Boston Capital employs in Texas.

4

general jurisdiction in a forum other than the place of incorporation or principal place of business." *Ritter*, 768 F.3d at 432. Even viewing the facts in the light most favorable to Architettura, Boston Capital's contacts with Texas do not justify suit "on causes of action arising from dealings entirely distinct from" its activities in Texas. *Intl. Shoe Co. v. Wash.*, 326 U.S. 310, 318 (1945).

First, the fact that Boston Capital has two subsidiaries that operate and routinely do business in Texas is insufficient to confer general personal jurisdiction. The Court must presume that Boston Capital's subsidiaries are independent of Boston Capital for jurisdictional purposes. *See GlobeRanger Corp. v. Software AG*, Civ. A. No. 3:11-CV-0403-B, 2013 WL 1499357, at *5 (N.D. Tex. Apr. 12, 2013) (citing *Gonzales v. Bank of Am. Ins. Servs., Inc.*, 454 F. App'x 295, 300 (5th Cir. 2011)). To overcome this presumption, Architettura must provide "clear evidence" showing that "the parent possesses control over the subsidiary to a great[er] degree than that normally associated with common ownership." *Id.* (citing *Gonzales*, 454 F. App'x at 300-01). There are a number of factors relevant to the control analysis, including "the amount of the subsidiary's stock owned by the parent corporation, the existence of separate headquarters, [and] the observance of corporate formalities." *Licea v. Curacao Drydock Co., Inc.*, 627 F. App'x 343, 348 (5th Cir. 2015) (quoting *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175 (Tex. 2007)). Architettura does not address any of these factors, and alleges only that one of the subsidiaries, Boston Capital Finance, LLC, "has no other decision makers in its corporate structure other than [Boston Capital]." Pl.'s Br. 13. The Court finds that this solitary allegation does not constitute "clear evidence" that the contacts of Boston Capital's subsidiaries may be imputed to Boston Capital for jurisdictional purposes.

Second, the fact that Boston Capital has invested in projects in Texas is insufficient to confer general personal jurisdiction. "[T]he inquiry under *Goodyear* is not whether a foreign

5

corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the foreign state.'" *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014) (quoting *Goodyear*, 564 U.S. at 919). Here, as in *Daimler*, finding general personal jurisdiction in Texas would subject Boston Capital to such jurisdiction in "every other State in which [its investments] are sizable." *Id.* at 139. Doing so would "scarcely permit" Boston Capital to structure its conduct "with some minimum assurance as to where that conduct will and will not render [it] liable to suit." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Finally, the presence of an undetermined number of Boston Capital employees in Texas is insufficient to confer general jurisdiction under Fifth Circuit precedent. *See, e.g.*, *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 235 (5th Cir. 2016) ("This court has declined to exercise general personal jurisdiction over a corporation where its most significant and continuous contact with the forum was having employees located there." (citing *Bowles v. Ranger Land Sys., Inc.*, 527 F. App'x 319, 321-22 (5th Cir. 2013))). Examining Boston Capital's Texas contacts in the aggregate, this Court concludes that Architettura has failed to make a prima facie showing of general personal jurisdiction.

Architettura also has not established a prima facie case of specific personal jurisdiction. Architettura alleges that Boston Capital is subject to specific personal jurisdiction in Texas because (1) an entity, of which Boston Capital is a general partner, provided a loan to the Avondale Seniors developer; and (2) Boston Capital monitored the work being done on the Avondale Seniors project. Although Architettura does not separately address it, the Court will also consider the allegation that Boston Capital shared the allegedly infringing marketing brochure for Avondale Seniors with

potential investors.[2] Even if taken as true, these allegations are insufficient to establish a prima facie case of specific personal jurisdiction over Boston Capital.

The first allegation fails to establish specific personal jurisdiction because, as Architettura concedes in its response, the loan to Avondale Seniors was made not by Boston Capital but by its wholly owned subsidiary, Boston Capital Holdings Limited Partnership ("BC Holdings").[3] *See* Pl.'s Br. 11. "When determining if personal jurisdiction can be imputed through a parent-subsidiary relationship, we begin with a presumption that a subsidiary, *even one that is wholly-owned*, is independent of its parent for jurisdictional purposes." *Gonzales*, 454 F. App'x at 300 (emphasis added) (citing *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999)). As noted above, courts in the Fifth Circuit consider a list of factors to determine whether the plaintiff has adduced "clear evidence that is sufficient to demonstrate that the subsidiary is the alter ego of the parent." *Id.* Architettura fails to address this analysis and relies solely on the fact that BC Holdings is a wholly owned subsidiary of Boston Capital. As noted by the Fifth Circuit in *Gonzales*, this allegation is insufficient, standing alone, to overcome the presumption of corporate separateness. *See* 454 F. App'x at 300. Thus, the provision of a loan by BC Holdings, an entity separate from Boston Capital, does not suffice to establish specific personal jurisdiction.

Under the same reasoning, the third allegation also fails to establish specific personal jurisdiction. Architettura alleges that "[Boston Capital] was in Texas to oversee (monitor) the

---

[2] In its Complaint, Architettura makes the argument that "[Boston Capital] . . . disseminated the infringed works (through the marketing brochure) to its potential investors." Compl. 3.

[3] Because Architettura concedes in its response that Boston Capital itself did not provide the loan, and because Boston Capital controverted the allegation that it provided the loan with an opposing affidavit, the Court need not, and does not, accept as true Architettura's allegation that Boston Capital provided the loan. *See* Compl. 3; *see also Graff v. Owings Gallery, Inc.*, Civ. A. No. 3:17-CV-0459-K, 2017 WL 2118346, at *2 (N.D. Tex. May 16, 2017) ("The [C]ourt will take the allegations of the complaint as true, except where they are controverted by opposing affidavits.").

work on the project." Pl.'s Br. 11. However, it bases this allegation on the fact that Boston Capital "has come to Texas to oversee and monitor all projects in which it has had an investment." *Id.* As noted above, Architettura has not pleaded successfully that Boston Capital itself had an investment in the Avondale Seniors project. And, even if Boston Capital did oversee work on the project, Architettura has not alleged facts connecting that oversight to any of the allegedly infringing activities.

Finally, the allegation that Boston Capital reviewed and disseminated an allegedly infringing marketing brochure does not establish specific personal jurisdiction. Architettura failed to allege that either the review or the dissemination occurred in Texas. In fact, Architettura contends that the reason Boston Capital disseminated the brochure was to seek out potential investors. *See* Compl. ¶ 35. Architettura only identifies one investor related to Boston Capital – BC Holdings, a Massachusetts limited partnership. *See* Def.'s App. Ex. 3, at 008. Thus, the pleadings contain no support for the idea that Boston Capital purposefully directed its activities at Texas.

For these reasons, Architettura has failed to establish a prima facie case of either general or specific personal jurisdiction, and the Court grants Boston Capital's Motion to Dismiss.[4]

### IV. JURISDICTIONAL DISCOVERY

The Court denies Architettura's request for limited jurisdictional discovery. Whether to permit discovery regarding personal jurisdiction rests within the Court's discretion. *See Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). A court need not permit jurisdictional discovery if the

---

[4] Boston Capital also moves to dismiss Architettura's claims under Rule 12(b)(6) for failure to state a claim on which relief can be granted. The Court does not reach any grounds for Boston Capital's motion other than those addressed in this Memorandum Opinion and Order.

plaintiff cannot make "even a preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). For the reasons previously stated, the Court holds that Architettura has failed to make a preliminary showing of jurisdiction. Therefore, the Court denies Architettura's request to conduct jurisdictional discovery.

## V. CONCLUSION

The Court holds that there are insufficient contacts to establish either general or specific personal jurisdiction over Boston Capital. Finding no minimum contacts, the Court need not inquire into fairness. For these reasons, the Court grants Boston Capital's Motion to Dismiss. The Court will not permit Architettura to amend its Complaint for the fourth time. Architettura has been on notice of the jurisdictional deficiencies since Boston Capital filed the Prior Motion on Feburary 9, 2017, yet it has pleaded nothing new to support a finding of personal jurisdiction. Thus, the Court finds that amendment would be futile. *See Ballard v. Devon Energy Prod. Co.*, 678 F.3d 360, 364 (5th Cir. 2012) ("Denial of leave to amend may be warranted for . . . futility of a proposed amendment." (citation omitted)).

**SO ORDERED.**

SIGNED ~~July 13~~, 2018.

KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE